UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MINNESOTA LAWYERS MUTUAL, | ) | CASE NO. 1:13-cv-845 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| JOHN P. HILDEBRAND CO., LPA, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on three motions to dismiss or stay this case, filed, respectively, by defendants John P. Hildebrand, Sr. ("Hildebrand Sr.") and John P. Hildebrand Co., LPA ("the Hildebrand Sr. firm"), defendant John P. Hildebrand, Jr. ("Hildebrand Jr."), and defendant Terese Komorowski ("Komorowski"). (Doc. Nos. 13, 14, 19.) Plaintiff filed a single response to Hildebrand Sr. and the Hildebrand Sr. firm's motion to dismiss, as well as Hildebrand Jr.'s motion to dismiss (Doc. No. 17), and a separate response to Komorowski's motion to dismiss. (Doc. No. 20.) Hildebrand Sr. and the Hildebrand Sr. firm filed a reply. (Doc. No. 18.) For the reasons set forth below, the motions are GRANTED.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Minnesota Lawyers Mutual Insurance Company ("MLM") first issued a "Lawyers' Professional Liability Policy" ("the Policy") in 2004 to Hildebrand & Hildebrand ("the Hildebrand firm"), a law firm whose members were Hildebrand Sr. and Hildebrand Jr.[1]

---

[1] The initial policy ran from April 1, 2004 through April 1, 2005. (Doc. No. 1 at 4.) Subsequent policies also ran from April 1 to April 1.

(Doc. No. 1 at 3-4.) The Hildebrand firm, through Hildebrand Sr., renewed the policy each year from 2005 through 2010, attesting in every renewal application that "the firm was not aware of any claims or circumstances that could reasonably result in claims or disciplinary actions that had not been reported to MLM." (*Id.*)[2]

The policy covered "all DAMAGES the INSURED may be legally obligated to pay and CLAIM EXPENSE(S), due to any CLAIM," resulting from the rendering of or failure to render professional legal services. (Doc. No. 1-5 at 28.) The policy contains a number of exceptions from coverage, one of which is "any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions[.]" (*Id.* at 30.) The Innocent Insured Protection provision continues to cover any insured who did not participate in and had no knowledge of a fellow insured's non-covered act, provided that the innocent insured, upon learning of the act, took appropriate action to prevent further wrongdoing and immediately notified MLM of the act. (*Id.* at 31.)

While Hildebrand Sr. repeatedly affirmed the lack of potential malpractice claims in the Hildebrand firm's insurance policy renewal applications, Hildebrand Jr. engaged in conduct that led to his permanent disbarment from the practice of law in Ohio. *See Cleveland Metro. Bar Ass'n v. Hildebrand*, 127 Ohio St. 3d 304, 939 N.E.2d 823 (2010). From August 2008 to February 2009, the Cleveland Metropolitan Bar Association received three grievances against Hildebrand Jr. *Id.* at 305-07. On July 22, 2009, the Bar Association gave Hildebrand Jr.

---

[2] Specifically, the application asked: (1) "Have any claims been made against the applicant or the applicant's predecessors in business, or any past or present firm members or employees within the past 5 years?" (2) "Is any firm member aware of any INCIDENT that COULD REASONABLY result in a claim being made against the applicant, its predecessors or any past or present firm members?" and (3) "Has any attorney proposed for this insurance ever been disciplined publicly or privately for an ethics violation?" (Doc. No. 1-3 at 20.)

notice that it intended to file a complaint of professional misconduct against Hildebrand Jr. and did indeed file a 16-count complaint on August 17, 2009. *Id*. at 304. On November 4, 2009, Hildebrand Jr.'s law license was suspended. (Doc. No. 1 at 11.) Finally, on December 1, 2010, Hildebrand Jr. was permanently disbarred. (*Id*.)

On March 24, 2010, after Hildebrand Jr.'s suspension, Hildebrand Sr. asked MLM to remove Hildebrand Jr. from the Policy, effective December 31, 2009, and to change the firm name from the Hildebrand firm to the Hildebrand Sr. firm. (*Id*. at 5.) MLM complied, issuing a policy to the Hildebrand Sr. firm for the period of April 1, 2010 to April 1, 2011. (*Id*.) Hildebrand Sr. did not otherwise alter the policy and did not indicate that any malpractice claims could be expected. On December 13, 2010, after Hildebrand Jr.'s permanent disbarment, Hildebrand Sr. informed MLM that Komorowski intended to bring a malpractice claim against Hildebrand Sr., Hildebrand Jr., and the Hildebrand Sr. law firm (collectively, the "state court defendants"). (*Id*. at 10.)

Komorowski filed a complaint[3] against the anticipated parties in the Cuyahoga County Common Pleas Court on April 4, 2011, asserting legal malpractice, false representation as an attorney, fraud, and conversion. (*See* Doc. No. 1-6.) Though it defends this claim, MLM does so "under a full reservation of rights[,]" i.e., "without making a final determination as to available coverage." (Doc. No. 13-1 at 122.) On August 26, 2013, the state court defendants filed a motion for leave to file a third-party complaint for declaratory judgment against MLM, who is not a party in that case. On September 20, 2013, the state court denied the motion by way of

---

[3] The three grievances received by the Bar Association that prompted disciplinary proceedings against Hildebrand Jr. did not include any grievance filed by Komorowski.

3

journal entry. (*See* Doc. No. 17-1.) The case is still pending.[4]

Plaintiff filed this declaratory judgment action on April 15, 2013, seeking the following declarations: (1) "[t]he Policy is void *ab initio* and/or subject to rescission because the Hildebrand Defendants failed to accurately report known and potential claims in the original and each subsequent renewal application[,]" (2) "[t]he policy does not provide coverage for the damages sought in the Komorowski Complaint[,]" (3) "[t]he damages sought in the Komorowski Complaint arise out of dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the Hildebrand Defendants and are therefore excluded from coverage[,]" and (4) "[t]he Innocent Insured Protection does not apply to extend coverage under the Policy to any of the Hildebrand Defendants." (Doc. No. 1 at 15-16.) Essentially, plaintiff asks this Court to determine immediately whether it must indemnify the state court defendants in the state court action. Each defendant wishes to dismiss or stay this case pending the state court's ruling on the state court defendants' liability to Komorowski.[5]

## II.  LAW AND ANALYSIS

Plaintiff has invoked this Court's jurisdiction under the Declaratory Judgment Act, which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration," "[i]n a case of actual controversy within its jurisdiction[.]" 28 U.S.C. § 2201(a). "[T]he granting of a declaratory judgment rests in the sound discretion of the court[.]" *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325

---

[4] A review of the state court docket reveals that discovery disputes are currently pending and the trial date of November 4, 2013, has been canceled.

[5] Much of the parties' briefing relies on assumptions now mooted by the state court's rulings. The motions of Hildebrand Sr. and Hildebrand Jr., and MLM's opposition thereto, focus largely on (1) the impending state court trial date of November 4, 2013, and (2) the possibility that the state court might grant the state court defendants' motion for leave to file a third-party complaint against MLM. When the state court canceled the jury trial and denied the motion for leave to file a third-party complaint, much of the briefing was mooted.

(6th Cir. 1984) (citation and quotation marks omitted). In exercising its discretion, the district court should consider the following factors: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Id*. at 326 (citation and quotation marks omitted). The Court shall address each factor in turn.

1. If the Court exercised jurisdiction over the declaratory judgment action, it could settle the controversy over the policy coverage.

The Sixth Circuit has often applied the first factor—settling the controversy—to declaratory judgment actions by insurance companies to determine policy liability, with inconsistent results. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id*. (citations omitted). Another set of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in the state court." *Id*. (citations omitted). Cases fit within one of the two categories based on two factors: (1) whether all parties are joined to both actions and (2) whether the issues in the federal declaratory judgment action are also before the state court.

Declaratory judgment plaintiffs who join all relevant state parties to the federal

5

action may be able to settle the controversy in federal court. In *Scottsdale*, for example, the Sixth Circuit noted that the declaratory plaintiff/insurer, who was not a party to the state court action, joined the state court plaintiff and one of the state court defendants in the federal declaratory judgment action. *Id*. at 556. The declaratory judgment, therefore, "resolved all controversies" between the declaratory plaintiff, state court plaintiff, and the relevant state court defendants. *Id*. The state court, for its part, could not possibly resolve the coverage controversy because the federal plaintiff/insurer was not a party to the state action. *See id.*; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("Because [declaratory plaintiff] was not a party in the state court proceedings, it would not have been bound by the state court's determination."). Accordingly, when the federal plaintiff does not participate in the state action and its claims are thus not before the state court, the first factor weighs in favor of federal jurisdiction, when all relevant parties have been joined to the federal action. *See W. Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006); *Mid-Continent Ins. Co. v. Coder*, No. 1:12 CV 333, 2013 WL 1633380, at *4 (N.D. Ohio Apr. 15, 2013) (declaratory plaintiff not party to state court action but joined all state parties to federal action so that all "had an opportunity to be heard on the issue" in the federal action); *Carolina Cas. Ins. Co. v. Keeney*, Civil Action No. 3:10-CV-00198-R, 2013 WL 5272929, at *2 (W.D. Ky. Sept. 17, 2013) (declaratory action would settle insurance coverage controversy between parties and was not a question before state court).

When, however, the declaratory plaintiff fails to join a relevant party to the federal declaratory judgment action, the action could not settle the controversy. In insurance coverage cases, this typically occurs when the declaratory plaintiff/insurer sues only the insured party, omitting the injured party. In that situation, "any judgment in the federal court would not

6

be binding as to [the state court plaintiff] and could not be res judicata in the [state court action]." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004); *see also Travelers Indem. Ins. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (state court parties were not joined in federal declaratory action, preventing resolution as to all relevant parties).

Here, as in *Scottsdale*, MLM has joined all relevant state court parties to this federal declaratory judgment action. Accordingly, this Court's decision would settle the insurance coverage controversy between all the parties and would legally bind each of them both here and in state court. *Compare Scottsdale*, 513 F.3d at 555 (joining all relevant state court parties allowed district court to resolve all controversies) *with Bituminous*, 373 F.3d at 814 (failing to join state court plaintiff to federal action prevented district court from settling the controversy). Indeed, the Court's decision regarding coverage "will either obviate or mandate the need for further participation" in the state court litigation by MLM. *Long v. CVS Caremark Corp.*, 695 F. Supp. 2d 633, 641 (N.D. Ohio 2010). The state action, moreover, could not resolve the insurance controversy because MLM is not presently a party to the state court action, and the parties have not successfully raised the coverage controversy there. Though a declaratory judgment would not resolve the underlying tort action, the Sixth Circuit does not require this action to resolve all controversies between all parties. The first *Grand Trunk* factor, therefore, weighs in favor of jurisdiction.

2. If the Court exercised jurisdiction over the declaratory judgment action, it could confuse rather than clarify the legal relations between the parties.

The second *Grand Trunk* factor "is closely related to the first factor and is often considered in connection with it." *Scottsdale*, 513 F.3d at 557 (citation omitted). If, under the

7

first factor, the declaratory judgment will settle the controversy, it will also, almost of necessity, clarify the legal relations in issue. *Id.* (citations omitted). Under this factor, district courts should consider whether the "federal declaratory judgment will clarify the legal relationships presented to the district court[,]" even if "the parties may have other tortious or contractual relationships to clarify in state court[.]" *Id.* Accordingly, a court looks to "the discrete dispute presented[,]" not the whole universe of the parties' legal entanglements. *Id.* In *Scottsdale*, the court determined that a declaratory judgment as to insurance coverage—the discrete dispute presented—would clarify legal relations. As above, however, the Sixth Circuit has also found this factor to counsel against jurisdiction when the declaratory judgment action would "clarify the legal relationship" between the insurer and the insured, but would not clarify the relationship between the parties in the underlying state action. *Bituminous*, 373 F.3d at 814.

Once again, key factual differences between *Scottsdale* and *Bituminous* led to disparate results. In *Scottsdale*, the Sixth Circuit found that "[w]hile [the district court order] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues." 513 F.3d at 557. The district court's attempted clarification of the legal relationships in *Bituminous*, on the other hand, led to two contradictory rulings on the central legal relationship: the employment relationship between the state court plaintiff and defendant. The district court reached one decision, with the state court reaching a directly adverse decision. The Sixth Circuit found that the district court should have realized that its declaratory judgment could and did create confusion in the state court about the state court parties' legal relationships. 373 F.3d at 817.

The discrete dispute presented in this case is whether the policy issued by MLM to the Hildebrand firm covers the damages sought in the state litigation. A declaratory judgment

8

in this Court would determine the policy coverage, the discrete dispute presented, and "therefore would help clarify the legal relations in issue." *Long*, 695 F. Supp. 2d at 642. As mentioned above, it would not clarify the legal relations between Komorowski and the state court defendants; however, their relationship is not the "discrete dispute presented" to this Court.

As in *Bituminous*, however, the "discrete dispute presented" to this Court involves the same questions before the state court and could lead to confusion there. MLM asks this Court to determine that "[t]he damages sought in the Komorowski Complaint arise out of dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the Hildebrand Defendants and are therefore excluded from coverage under the Policy." (Doc. No. 1 at 15.) In counts two and three of her state court complaint, Komorowski has alleged, respectively, "[Hildebrand Jr.] falsely represented to [Komorowski] that he was a duly registered attorney in good standing by committing to represent [Komorowski] to open an estate for her deceased husband and to represent her in the foreclosure proceeding" in violation of Ohio Rev. Code § 4705.07[6] and "[state court defendants] falsely represented to [Komorowski] that [Hildebrand Jr.] was duly registered and permitted to practice law in the state of Ohio and/or falsely represented by omission when they had a duty to disclose that [Hildebrand Jr.] was not duly registered and permitted to practice law in the state of Ohio[,]" constituting fraud. (Doc. No. 1-6 at 46.) In short, in markedly similar terms to MLM's federal complaint, Komorowski alleges that

---

[6] The statute provides, in relevant part:
  (A) No person who is not licensed to practice law in this state shall do any of the following:
    (1)    Hold that person out in any manner as an attorney at law;
    (2)    Represent that person orally or in writing, directly or indirectly, as being authorized to practice law;
    (3)    Commit any act that is prohibited by the supreme court as being the unauthorized practice of law.
Ohio Rev. Code. § 4705.07.

Hildebrand Jr. committed dishonest and fraudulent acts.

To be sure, the declaratory judgment claims sweep more broadly than the claims in the state court litigation. MLM alleges that the Hildebrand firm's policy was void *ab initio* due to misstatements in the policy application. (Doc. No. 1 at 15.) Komorowski, meanwhile, focuses her complaint only on actions directly perpetrated against her. Yet, both the federal and state actions may require determining whether certain conduct rose to the level of dishonesty or fraud. The state court might be obliged to determine the preclusive effect of this Court's ruling, and, given that the issues are factually similar, though not identical, could potentially reach an inconsistent judgment. This Court's conclusion on the matter could disrupt and confuse, rather than clarify, the state court's resolution of the legal relations between the parties. The second *Grand Trunk* factor, therefore, weighs against exercising jurisdiction.

3. In filing this declaratory judgment action, MLM has not engaged in procedural fencing or a race to res judicata.

The third *Grand Trunk* factor requires the Court to consider procedural fencing and a race to res judicata. Procedural fencing typically occurs when a declaratory plaintiff, attempting to secure a favorable forum, files suit mere days or weeks before the natural plaintiff files suit elsewhere. *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). When, on the other hand, the declaratory plaintiff "filed [its] claim after the state court litigation has begun, [courts] have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Scottsdale*, 513 F.3d at 558 (quoting *Bituminous,* 373 F.3d at 814). Notably, courts consistently refuse to infer procedural fencing when the declaratory judgment action is filed years after the competing state proceedings. *See, e.g.*, *Scottsdale*, 513 F.3d at 558 (declaratory judgment suit filed "several years" after state court complaint);

10

*Bituminous*, 373 F.3d at 814 (declaratory judgment suit filed two years after initial state court action); *W. Am. Ins.*, 208 F. App'x at 398 (declaratory judgment suit filed one year after state tort action); *Mid-Continent*, 2013 WL 1633380, at *4.

A race to res judicata cannot occur when the parties to the declaratory judgment action are not parties to the underlying state action. If the state action does not include the federal plaintiff such that the state judgment would not bind the federal plaintiff, its attempt to "clarify its legal obligations to [defendants] in federal court cannot be construed as an attempt to create a race to judgment." *Scottsdale*, 513 F.3d at 558. This holds true even if the "action may have been an attempt to preempt an issue which the state court would eventually consider." *Id*.[7]

Here, MLM filed this action on April 5, 2013, while Komorowski filed her complaint on April 4, 2011, two years prior. Thus, MLM has not engaged or attempted to engage in procedural fencing. Further, given that MLM has no part in the state litigation and shall not be bound by the state court judgment, this declaratory judgment action is not a race to res judicata. Accordingly, the third *Grand Trunk* factor weighs in favor of exercising jurisdiction.

4. If the Court exercised jurisdiction over the declaratory judgment action, it could result in friction between this Court and the state court.

While the mere existence of a state court proceeding does not prevent a district court from issuing a declaratory judgment, doing so might encroach upon or interfere with the state proceeding, creating friction between the court systems. *Scottsdale*, 513 F.3d at 559-60.

---

[7] In one unreported Sixth Circuit case, a district court did not abuse its discretion when it concluded that plaintiff raced to res judicata when it filed a federal declaratory action while a state court case was pending, but before the state court considered the indemnification issue. Because the "chain of events already in motion in state court . . . lead[s] ineluctably to that very issue being brought before the state court, it was apparent that [plaintiff] was trying to secure a favorable ruling here, rather than take the risk that it will not fare as well in [the] inevitable state court action against it." *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (quotation marks omitted). Following *Scottsdale*, the Court instead concludes that filing a declaratory action before an anticipated state indemnification proceeding is not a race to res judicata.

Determining whether a declaratory judgment action would create friction between state and federal courts, the fourth *Grand Trunk* factor, requires a court to consider three additional sub-factors: "1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action." *Northland*, 327 F.3d at 454 (citations omitted).

The Court must first determine whether this case requires resolution of underlying factual issues by the state court. In declaratory judgment actions involving insurance coverage, the scope of the coverage "can sometimes be resolved as a matter of law and do[es] not require factual findings by a state court." *Scottsdale*, 513 F.3d at 560 (citations omitted). Yet, "sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.*; *see also Mid-Continent*, 2013 WL 1633380, at *5 ("[A]lthough the Court can envision many situations in which coverage determinations will involve factual disputes related to the underlying tort, such is not the case here."); *Maryland Ins. Grp. v. Roskam Baking Co.*, 6 F. Supp. 2d 670, 673 (W.D. Mich. 1998) ("While it may be that this case presents the more unique situation where factual and legal issues in the liability case are distinct from policy interpretation issues, the Court cannot determine at this stage of the litigation whether common factual questions are involved.").

By way of example, when the federal declaratory plaintiff claimed that the insurance policy "did not provide for [the disputed] type of coverage[]" at all, no danger of conflicting federal and state factual findings lurked. *Carolina Cas.*, 2013 WL 5272929, at *1-3. Determining the insurance coverage was a matter of law, not fact. Similarly, when the

12

underlying state court case involved questions of negligence and comparative negligence, while the federal declaratory case involved the applicability of an insurance exclusion, the actions did not contain common factual questions under this factor. *W. Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781, 785 (E.D. Ky. 2005), *aff'd by* 208 F. App'x 393 (6th Cir. 2006). In contrast, in *Bituminous*, both the federal and state action required each court to determine the state plaintiff's employment status—a factual determination—and they came to different conclusions. 373 F.3d at 816. According to the Sixth Circuit, the federal district court should have abstained, allowing the state court to resolve the critical underlying factual issue. *Id.*

Under the second sub-factor, a court considers "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Scottsdale*, 513 F.3d at 560. State courts can better resolve "novel questions of state law[,]" *id.*, and issues wholly controlled by state law, including "the terms or exclusions in [] insurance contracts[.]" *Travelers Indem.*, 495 F.3d at 272; *see also Bituminous*, 373 F.3d at 815 ("employment status" and "insurance contract interpretation" better resolved by state court); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968-69 (6th Cir. 2000) (when no state court had previously construed the "special contract of insurance[]" at issue, the district court properly declined to exercise jurisdiction); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991) (coverage of automobile insurance policy in negligent entrustment case was "previously undetermined question of state law," more appropriately decided by state court); *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986) ("construction of the indemnification contract" and state law "governing conflict of interest by insurance lawyers" were state issues for state courts).

Under the final sub-factor, a court must consider "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state

court." *Scottsdale*, 513 F.3d at 561. Weighing this factor, a court considers whether the federal declaratory judgment action appears before the Court on diversity jurisdiction or whether federal common law or federal statutory law applies to its substantive issues. *Bituminous*, 373 F.3d at 816; *see also General Star Indem. Co. v. Springfield Prop., Inc.*, No. 3:13-cv-114, 2013 WL 3983139, at *3 (S.D. Ohio Aug. 1, 2013) (final sub-factor pointed to dismissal when federal action was diversity action without question of federal law). Yet, diversity jurisdiction, standing alone, does not dispose of the issue. If "no state law or policy would be frustrated by the district court's exercise of jurisdiction[]" over a diversity declaratory judgment action, this sub-factor need not automatically point to dismissal. *Northland*, 327 F.3d at 454. Insurance interpretation issues, however, always implicate state public policy. *Scottsdale*, 513 F.3d at 561; *see also U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 566 (6th Cir. 2006) (insurance coverage issues "arise in a field which is largely reserved to the states and thus implicate public policy considerations" of the state) (further quote omitted).

Evaluating these sub-factors, the Court concludes that this case presents the exact situation contemplated by the court in *Mid-Continent*: "the Court can envision many situations in which coverage determinations will involve factual disputes related to the underlying tort[.]" 2013 WL 1633380, at *5. The coverage determination, as pled by plaintiff, requires a factual determination of Hildebrand Jr.'s dishonest, criminal, or fraudulent act, all of which are questions of fact currently before the state court. Moreover, this case implicates important state policies—state insurance contracts and state regulation of attorneys. The declaratory judgment action appears before the Court solely on diversity jurisdiction and involves neither federal common law nor federal statutory law. All three sub-factors portend of friction between this Court and the state court. The fourth *Grand Trunk* factor weighs strongly against jurisdiction.

    5.  MLM may pursue alternative remedies in state court.

Under the final factor, the Court evaluates the alternative remedies available to the federal declaratory plaintiff. *Scottsdale*, 513 F.3d at 562. Though it always categorizes post-judgment indemnity actions as available alternatives, the Sixth Circuit has taken inconsistent positions on their efficacy. *Compare Scottsdale*, 513 F.3d at 562 (waiting for indemnity action not better or more efficient than federal declaratory action) *with Travelers Indem.*, 495 F.3d at 273 (availability of state declaratory action and state indemnity action "weighed against federal discretionary jurisdiction") *and Bituminous*, 373 F.3d at 816 (indemnity action filed at conclusion of state action was "superior alternative remedy"). Nor is the opportunity to intervene in the state court case "necessarily . . . a better or more effective alternative remedy." *Northland*, 327 F.3d at 454.

Alternative remedies exist in this case. MLM could certainly wait until the state court rules on the merits of Komorowski's complaint, whereupon Komorowski indicates, if appropriate, "she likely will bring a supplemental action against [MLM] under R.C. 3929.06." (Doc. No. 13 at 95.) Under § 3929.06, a plaintiff who receives an award of damages in a civil action against a "judgment debtor . . . insured against liability[,]" may subsequently "have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment." Ohio Rev. Code § 3929.06(A)(1). A successful plaintiff follows this procedure:

> [i]f, within thirty days after the entry of the final judgment . . . , the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount.

Ohio Rev. Code § 3929.06(A)(2). The insurer may assert any coverage defenses against the judgment creditor that the insurer could assert against the holder of the policy. Ohio Rev. Code § 3929.06(C)(1). To pursue this alternative remedy, if appropriate, the state court would first need to enter judgment in favor of Komorowski against the state court defendants, thenKomorowski would need to initiate proceedings against MLM under Ohio Rev. Code § 3929.06(A)(2). This remedy confines all issues and all parties to a single case in a single court, but forces MLM to wait longer for a determination of its legal duties.

As a further alternative remedy, Ohio law allows any interested party to file a declaratory judgment action to obtain a declaration of its rights. Ohio Rev. Code § 2721.01 *et seq*. The Court can discern no difference between a state declaratory judgment action and this federal declaratory judgment action, except that a state declaratory judgment action enables the state court to pass on issues of state insurance law.

Given the existence of these two remedies, the Court concludes that remedies equal to or better than this declaratory judgment action await MLM in state court. Accordingly, the fifth *Grand Trunk* factor points, at least slightly, to declining jurisdiction.

6. After weighing the factors, the Court declines to exercise jurisdiction over this declaratory judgment action.

After reviewing all the *Grand Trunk* factors, the Court finds that the first and third factors weigh in favor of exercising jurisdiction. The second and fourth factors weigh strongly against exercising jurisdiction, while the fifth factor is either neutral or slightly weighs in favor of declining jurisdiction. On balance, the Court finds that the danger of inconsistent fact findings on the issue of the state court defendants' dishonesty and/or fraudulent behavior overwhelms the other factors. Pursuant to its discretion under 28 U.S.C. § 2201(a), the Court declines to

determine MLM's rights and duties under the policy it issued to the Hildebrand firm.

### III. CONCLUSION

For the reasons set forth above, each defendant's motion to dismiss is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED**.


Dated: March 17, 2014

                                             **HONORABLE SARA LIOI**
                                             **UNITED STATES DISTRICT JUDGE**